Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you. We'd be happy to hear argument in our first case. Safar v. Tingle. Mr. Glassberg. If it please the Court, I would like to begin by two quotations, one from Judge Wilkinson in the 1993 case, Taylor v. Farmer. A police officer may not close her or his eyes to facts that would help clarify the circumstances. That was in a case denying qualified immunity. I'd also like to quote from a recent decision by Judge Payne, which was affirmed in a decision in which Judge Floyd joined. The Fourth Circuit has, and that case is, Bennett v. R&L Carriers Shared Services. Both of these are cited in the brief. The Fourth Circuit has explained that a person who places before a prosecuting officer information upon which criminal proceedings are begun, and later requires additional information casting doubt on the accused's guilt, should be under an obligation to disclose his discovery to the prosecutor. The issue in this case is foundational. In the United States, one cannot suffer the arrest of a person known not to have committed a crime because there was no crime. This isn't a question of exculpatory evidence. A lot of people say that John Doe didn't do it. This is a case where the police officer knew, the prosecutor knew, that there was no crime. And indeed, the prosecutor dismissed the same case against the second defendant, the second appellant's husband. Now, I recognize that one does not take broad principles like you can't arrest innocent persons and simply apply them. You have to look at the specific context of the case, Merchant v. Bauer, and there's a whole lot of case law that says that. So if you look at the specific context of the case, what you know is that the police officer was told, specifically, the day after the arrest warrant was sworn out, that there had been no crime. Well, it's not an unusual thing. Well, I don't want to generalize, but it would not be unusual for a police officer to receive evidence that a victim has recanted his or her rendition of the facts supporting an offense. That alone can't be enough, right? What is it about this case that makes it different? What makes it different, Judge, is the nature and quality of the contention being brought by the complaining party. The example that I gave in my brief was a domestic relations dispute where the complaining party, upon the appearance of the police officer, says, well, it didn't really happen. I don't want to press charges. This is a major corporation with professional loss prevention managers. They are calling the police officer and telling him, and then they are appearing in court on the day when the first- Well, what is it you think the police officer should have done here? Well, the police officer had several options. One option was to go to her police chief. One option was to go to the prosecutor. She had to do something. A police officer couldn't on her own- Absolutely not. No, she cannot. And we've laid out in the brief the steps that are available under the procedures that they have. The police chief or a prosecutor can simply ask for the warrant to be quashed. And that's what should have happened here. Let me offer this thought. They would make a motion to the court to quash the warrant? I don't know. I don't know if the police chief would make a motion or do it administratively. As an officer of the court, the prosecutor would be the one to make the motion? It could be, but I can't say that necessarily because in this case what the rules that govern the withdrawal of warrants before they are served are specifically characterized by the Virginia procedures as administrative and not criminal matters. And the protocols that they follow do not conform with what is done with criminal dispositions. But she couldn't have appeared on her own motion before the court. She, Judge? She could not have moved for the warrant to be quashed. She could not have moved herself for the warrant to be quashed. She could not have moved the court herself for the warrant to be quashed. I don't know that her lawyer could not have if Costco was there saying that there was no crime. What I'm trying to get at is what procedures, what is the normal procedure to quash a warrant? I mean, it may be that the police officer thought, well, this is beyond my authority. This is something I can't do. Judge, what she can do is something. She cannot remain silent in the knowledge that there is a warrant out for the arrest of an innocent person. If you will look, please, at the appendix at page 77. Do we know that she said nothing to the prosecutor? Well, that's one of the problems that we have here because, for example, we didn't have discovery in the case. This is not here before you on summary judgment. And the only thing we have is information to the effect that she was told right after the arrest that there was no crime and that on the day of the trial of her husband, the Costco representative said the same thing. We don't know. And as I noted in my brief, what if she had asked the prosecutor and the prosecutor said, I'll take care of it? We don't know. Well, I would request you can see the procedures in question at pages 77 and 78 of the appendix, which deals with these matters as administrative rather than criminal matters. Mr. Glassberg, how would you deal with what we have to write an opinion, obviously, in this case. How would you craft a rule that accounts for the vagaries of victims' recanting? And it can't be the case, I think you've admitted, that every time a victim recants that an officer is obligated to do something. Judge, there is a difference between recanting and recognizing that a mistake was made and that there was no crime committed. Permit me this example, if I may. The warrant was sworn out in the evening, right before the store closed. The very next morning, Costco looks at their records and realizes they made a mistake, so they call her. It was a matter of one or two business hours. What if they called her a second after she got the magistrate to sign the warrant? She gets the warrant. She gets a call from Costco. Sorry, it was a mistake. We checked our records. Nothing happened. I respectfully submit that in this country, she can't do nothing. Let's assume that at the end of the day, the prosecutor and the officer, at least on the Fed claims, get some type of immunity. What about your state law claim for gross negligence? That's a judgment call for the court to make, Judge. If a police officer armed with knowledge that someone is innocent and in circumstances where the co-defendant has been dismissed out of a recognition of innocence can do nothing. I think what we are concerned about here, at least I'm concerned about here, is how far you take this. I'm just not sure that just in terms of immunity that these kinds of duties have been firmly or clearly established in the law. The problem is after a rest warrant is issued, there's almost always going to be some subsequent information. A lot of it may be exculpatory, as my colleague Judge Diaz has said. It may be that there's a recantation, but information is shifted in these cases all the time. Sometimes you learn more that's inculpatory. Sometimes you learn something that's exculpatory. These cases occur all the time to the extent that if we're going to have a lawsuit every time a warrant is not withdrawn in the face of additional information, that's a very litigious step. I recognize that, Judge, and I respectfully submit that there's a difference when no crime has happened and is accepted and known to have happened. Where is the clearly established law that imposes? I mean, the prosecutors are a different kind of thing because they have absolute immunity, but where is the law that establishes a duty on the part of a police officer to take this step? Judge, the law is 800 years of Anglo-American jurisprudence, which represents the proposition that one cannot knowingly arrest a person who is known not to have committed an offense. One cannot do that, and there are any number of cases, including Taylor v. Farmer, in which you affirmed the denial of qualified immunity, which simply recognized that the police officer has to do something. Now, it may be a trial. The other thing I'm getting at is at what point in a proceeding is a warrant quashed? Is it a normal proceeding for a warrant to be quashed at a preliminary hearing, before a grand jury? I mean, the judicial process has many different stages, and rather than a police officer making an ex parte judgment at the beginning of the whole process, is this kind of thing normally the sort of thing that we would expect the criminal justice process to weed out? Yes, Judge. In its own manner, and a police officer could well have thought that, to the degree that there's a problem here, a magistrate will resolve it or what have you. But somebody has to articulate it. Somebody has to articulate it before the poor woman's arrested. The answer is that were we to go to trial, I would present evidence, expert evidence, that this happens with some frequency when it becomes clear that there has been no crime. What happens with some frequency? That a prosecutor will cause a warrant to be withdrawn before it has been served, before there's any prosecution, as an administrative matter. Somebody stole my wallet. Oh, gosh, here's my wallet. My wife just gave it to me. Okay, it's withdrawn. I represent, this is not in the record because we haven't gotten there. Now, is that relevant to whether or not qualified immunity should not apply in this context? Because all that is required is for the person with knowledge, the sole person with knowledge, to articulate the problem to someone who's in a position to do something about it. You can't do nothing. In your words, Judge Wilkins said, a police officer may not close her eyes to facts that may help clarify the circumstances. She can't do it herself. The police officer can't do it herself. But she can't be silent. My time is up. I have not had occasion to address the issue of absolute immunity, which I do wish to address. I guess I'll do that on rebuttal. Thank you. Reserve some time. Mr. Frank Uzanko? May it please the Court. Your Honors, good morning. My name is Alex Frank Uzanko, and I represent Deputy Commonwealth's Attorney Lisa Tingle. With regard to my client, the issue really is absolute immunity and its applicability to the undisputed facts in this case. This case was dismissed at the motion-to-dismiss stage, as Mr. Glassberg mentioned. So we're looking at the complaint, the allegations contained in the complaint, as the factual predicate for Judge Ellis's ruling. Your client is the prosecutor? Yes, Your Honor. Defendant Tingle is the prosecutor in this case. And when we look at the complaint and her involvement in this case, this truly is a case that falls squarely within what absolute immunity is all about. Costco, the corporate defendant who was a defendant in this case at one point, did call the police. Ms. Rodriguez, the police officer, investigated the alleged crime and went to the magistrate and obtained a warrant for both S. Chau and Ms. Safar, a married couple. Subsequently, the warrant was served on the husband when he was pulled over, and a preliminary hearing was scheduled. At that point, that's where my client gets involved. The criminal process at this point is engaged. It is in full swing. There's a preliminary hearing, at which point Officer Rodriguez is present, Mr. S. Chau, one of the named plaintiffs, is present, and Ms. Safar, the plaintiff who has only claims against my client. Just to make it clear in terms of procedurally, Mr. S. Chau, the husband, does not have claims against Ms. Tingle, because when he came for the preliminary hearing, his case was dismissed. Now, the undisputed facts also include that Ms. Safar's warrant and Ms. Safar's case, that was not scheduled for a preliminary hearing that day. That was not on Prosecutor Tingle's docket, a docket she picked up that morning, a docket with a number of cases on it, and one in which she met with, for the first time, Rodriguez and perhaps a member from Costco. How does that help your client? Well, Your Honor, we're in the midst of the criminal process here. But if you say that the case wasn't on her docket, then it... It wasn't. What process was she involved in? She was not in any way, she was not involved in obtaining the warrant. She did not investigate any of the issues before. She didn't provide advice to Rodriguez. This was a case where there was a... By definition, that requires that the prosecutor be involved in some way and act with some measure of discretion. And if you're saying that the case wasn't on her docket, then what's the issue? It's the next step, Your Honor. The next step, which is what the plaintiff in this case is faulting my client. The next step, which the only way that that warrant gets dismissed is for it to be brought to court and for somebody from the prosecutor's office to make a motion with the court and ask that it be non-procedural or dismissed. Well, in Ms. Tingle's duty, she was acting administratively or should have been. She wouldn't be entitled to absolute immunity there. She would be entitled to qualified immunity, right? That's right, if the court deems her next step to be administrative. But I would respectfully argue, Judge Floyd, that having to bring a case back to the court and make a motion to non-process or to dismiss charges is not an administrative act. It's a discretionary act. She could have decided that factually, so far as a case was different than the husband. There could be a variety of reasons that the case wasn't brought back and dismissed. I guess the other point is the fact that the victim in this case may have changed its mind doesn't necessarily mean that the prosecutor is bound to accept that decision, right? That's right, and I think the court touched on that earlier. It happens all the time. If prosecutors lose immunity because of every time somebody recants or changes their stories, this ball was already rolling when it got to the preliminary hearing with Mr. Eschow. And as Judge Wilkinson pointed out, cases are dismissed all the time at various points during the criminal process. In this case, we have an unfortunate situation where a warrant was actually executed in a different state, which created a problem. The plaintiff in this case, Ms. Zafar, was in Prince George's County, Maryland. The difficulty I see here is that it opens a door to collateral attacks on all kinds of prosecutions for the failure to withdraw a search warrant or, more likely, an arrest warrant. The whole purpose of absolute immunity, it's a civil suit concept. It comes up in a civil context. And the whole purpose of the absolute immunity was to avoid collateral attacks upon a prosecutorial discretion. That's right. And one of the acts of discretion, of course, it's normally a discretionary act, is whether to quash a warrant. And that's closely tied up with prosecutorial judgment. That's right. And it clearly falls into intimately associated with the judicial phase of the criminal process, which is what Imbler and Burns both stand for, which is those cases, when you have that scenario, absolute immunity applies. And Judge Ellis touched on that in his opinion and was clear that that was one of the factors that he considered in granting absolute immunity in this case. And also he did, in the alternative, find that there was qualified immunity. In a case like this, there is no clearly established right. I understand Mr. Glassberg's point. We don't get there. I don't think you have to. I don't think you have to. But if you did, there's no established right to require a prosecutor to pull a case which is not on her docket to go look for other potential warrants associated with a case that is on her docket and then take the additional steps of making a motion to dismiss. There is no clearly established right for that. And going to Judge Floyd's question about the gross negligence claim, I would argue, Your Honor, that there's no duty, there's no clearly established right for a prosecutor to take those. Well, and my point would be that Virginia doesn't have a will of – they only have absolute immunity. They don't have qualified immunity. So as to the gross negligence claim, she would get absolute immunity. She would. Only because Virginia doesn't have the other. You're right, Your Honor. And I think it would be applicable whether it's the federal claims or state claims. She gets the benefit of that immunity. And one of the things that I would also argue that Judge Ellis said that there was no other – no repercussions, if you will. That's not true either. If her actions were so off base or mistaken, there could be complaints to the Virginia State Bar. I can tell you, representing prosecutors here in the Commonwealth of Virginia, the Virginia State Bar is not shy about going after prosecutors for alleged prosecutorial misconduct. So there are repercussions. There are other avenues that the plaintiffs could have pursued if truly Ms. Tingle's actions were of a level that required some type of discipline or – Do you accept if, in fact, the plaintiff's version of events are correct, that both the officer and the prosecutor understood that Costco had retracted its contentions with respect to both plaintiffs at the hearing, at the preliminary hearing? I accept that because that's – I think we have to because of the stage of the case we're at. That in July of 2013, when there was a preliminary hearing, the plaintiff alleges that Costco made that representation to Tingle and to the police officer. And I still – based on that allegation, which I think we have to accept because of where we're at procedurally, absolute immunity still applies. And I think Judge Ellis was correct in ruling in that way. Henry, do you have any questions? I'll do further questions. Thank you. Thank you, Your Honors. Mr. Judkins, we'd be happy to hear from you. Good morning. Julia Judkins on behalf of the officer, Stephanie Rodriguez. My argument is primarily on the constitutional question based on the cases of Brooks and Taylor, as I set forth in the memorandum. What is the duty? And it goes both to the federal claim and the state law claim. What is the duty that was clearly established that my client would have been on notice that she needed to take some affirmative action? Because as they have phrased it in their pleadings, it's not a false arrest claim. Everyone concedes that when the warrant was issued, it was issued on probable cause. They allege that my client had, number one, the right, number two, the duty, to actually do something affirmatively to avoid having an innocent person not be arrested. I'm not so much tied up on this immunity question. I'm interested in the gross negligence. All right. Is it not correct that the Supreme Court in Virginia has, they've never held that there's not a cause of action for negligent investigations. That's true, isn't it? The Virginia Supreme Court has not addressed that. The state courts have said there's no cause of action. So it's a possibility of either certifying that question to the Virginia Supreme Court or just to weigh into it here and now. Why couldn't they bring a cause of action for gross negligence in the investigation? My argument to that is gross negligence is not a cause of action. It's not a cause of action. There is no such thing as negligence in the abstract in Virginia. You always have to establish a legal duty. The first question is, is there a legal duty? And this is not a failure to investigate. They're not alleging that my client failed to investigate. That's not the issue up here on appeal. The issue is whether she affirmatively had a duty to undo the arrest warrant through some nameless process, what they claim is procedures available to her. Before the court, you'll see those general district court procedures that they've identified that are in the appendix, Mr. Glassberg, page 77, I believe he said, those are record retention procedures. They apply to the court. What happened here is, you know, it's pretty shabby. And if you take a complaint, these people did nothing wrong, and they were arrested and detained and the rest. So it's a disquieting scenario, to put it mildly. And what I wonder is, how do we assure ourselves that this doesn't become a routine matter where people have done no wrong and they're arrested and detained and nobody does anything about it? Well, then I submit to you that that's a question for the legislature, perhaps the Virginia General Assembly, to determine. Because if you're going to find that because of the particular facts in this case, which as to Mrs. Safar were bad, nobody could argue otherwise, then that's a result-oriented decision. And it's going to affect every other matter that comes before the court, and it's result-oriented based on the damages. We don't decide based on the damages. And I still want to answer Judge Floyd's question about the duty, because it's true in the federal context. Virginia is very particular about a duty. And if you look at the state court cases of Burns v. Gagnon, G-A-G-N-O-N, and the Kellerman case, they analyze whether people were responsible for bad things that happened to an innocent person. And if there is no duty, there's no negligence, regardless of the level of negligence. There has to be a recognized duty. And this isn't a failure-to-investigate case. So would the Virginia Supreme Court recognize a tort, just as would, is there a mechanism in the federal court based on Brooks and Taylor? Is there a duty to affirmatively take steps which have not been enumerated to you, and the law is clear, the police officer doesn't have authority to do anything? Well, let me stop you there, because you seem to be suggesting that the officer would have had to actually affirmatively undertake this admittedly uncertain Byzantine process to undo the warrant. But what Mr. Glassberg is arguing is an argument to common sense. She didn't have to do all of that. She simply needed to speak up to somebody, the police chief, the prosecutor, somebody, and say, hey, wait a minute, there's something wrong here. She did nothing. And based on Brooks versus Taylor, I argue to you that that is the law as established at the time. There is no duty. There's no, what is the duty? As Judge Wilkinson has pointed out, this is really disconcerting, because an officer has this awesome power and authority to literally take somebody's liberty away, and you're suggesting that once he or she does that, she can wash her hands of it. No, I'm not. What I'm suggesting is based on the facts in this case. She did nothing wrong in procuring the warrants. The allegations are, right, the allegations in the complaint are that Costco told her by telephone, we made a mistake. That's it. That's it. We made a mistake. Those are the allegations. This has been made into, morphed into an argument. She was innocent. She was this or that. That's not in the complaint. We made a mistake. And before you impose on a duty on an officer, where the established case law didn't even impose a duty on the law enforcement officer after the person had been arrested. But apparently under your argument, even if they had said she's innocent, we have no evidence to support the charge, the officer still was not required to do anything. Where is it that morally is different than legally? Your answer is she wasn't required to do anything, no matter how obvious it was that there was no crime committed. She's not required by law. What is the answer to that question? Yes, that's it. There isn't any law that says there isn't any mechanism for her, as Judge Ellis cited to the Attorney General's opinion. There could be. The General Assembly could do something about that. They could. But they didn't. They haven't. I mean, if it's not there. You say there's no law. What about the Fourth Amendment? The Fourth Amendment, as the case has said. In order to effect a seizure, you have to have probable cause, which evaporated here. Right. Well, it dissipated in a line of cases. It dissipated. This is not a situation where it dissipated during the time period the warrants were obtained. Those cases, in fact, the case that Mr. Glassberg cited, was the police officer doing the search of the lady in the farmer case, realistically looking at the person whose purse he was searching, realizing this couldn't possibly be the person who committed the crime. Are we really talking about something that, a principle that could get out of hand, or is this case limited by its facts in the sense that there's no, as the complaint states, there's no question of innocence here, and this individual police officer has been informed of that, and this individual police officer is the only one who knows anything about that, and there's an outstanding warrant, which is going to be on the person's record for quite a bit of time until the warrant is served, and the officer is the only one that's been told, and she was personally informed. How often, by Costco or the mistake that they had made, how often are circumstances that clear-cut going to arise? Well, they arose in Brooks and Taylor. That is, after the person was arrested and incarcerated, the officer knew information came to the officers in those cases that the person hadn't done it. Brooks v. Taylor, what is the site for that? Yes, I've got them right here. Brooks v. City of Winston-Salem is 85 Fed 3rd 178, and Taylor v. Waters is 81 Fed 3rd 429, both Fourth Circuit published opinions. It's not a different scenario. After probable cause was found, in between the person's, my time is up, if I may answer that. No, go ahead. Between the person's arrest, and one person was incarcerated for two months, the investigator knew that the person didn't do it, but he waited until the preliminary hearing to bring it to the prosecutor's attention, and the court said the Fourth Amendment, all that, the Fourth Amendment doesn't require an officer to do any more than that. That is, come forward at the preliminary hearing, is to make sure that the person, when they were arrested, you know, their properly issued warrant was in effect. This was a facially valid warrant. I will concede that Taylor has that broad language, but I think the facts in Taylor were a little bit more, I mean, there was some evidence suggesting that there was, that the defendant in that case had committed the offense. This is a clear-cut case of innocence. The sole victim in this case is saying nothing happened, whereas in Taylor, there was still, I mean, he lived in the house, there was some residue powder in the common use in the kitchen, so there was some evidence suggesting guilt. It was not as clear-cut as this case is, and I get your point that we may be treading down a dangerous path, but as Judge Wilkinson noted, this is a very unusual case. It is. It is a very unusual case, but I argue to you that the law was not clearly established at the time what she's supposed to do, what is she supposed to do. Thank you. Mr. Glassberg, with respect to the police officer, I am, this is a sympathetic tug for the plaintiff's case, but I am also concerned about this question of a duty that your opposing counsel brought up. Just in terms of the clearly established law, why wouldn't the duty on the police officer be simply to bring forward the facts at a preliminary hearing, and there was no preliminary hearing held here? Because what is at issue here is not to have someone arrested. Those cases all arise after the arrest, where the gravamen of the problem here is that someone is going to suffer an arrest of a knowingly innocent person. Let me, I'd like to address the issue that you raised of the slippery slope, and I understand that there's an issue here. I've been doing cases like this for 40 years, and I have never had a case involving the knowing arrest of a known innocent person. There are all manner of cases that arise. You actually affected the arrest. Another officer, and he's not been sued. Pardon? Another officer. This woman went to get her all clear for her American citizenship application, and there they found the warrant, so she was arrested. Okay. There's no liability there, obviously. I mean, Rodriguez didn't. No, no, no, no, no. And that's the problem. I'd also urge upon the Court that we're here on a. . . And I think one of the points that opposing counsel brought up is that if you can't point to a preexisting duty in federal law, doesn't the structure of our government require that these matters be left to disciplined police officers and law enforcement generally for malfeasance of this sort? I mean, everything doesn't have to be a federal claim, and more and more we're seeing states undertake reform efforts to address malfunctions in the law enforcement process. Probably because of. . . Why is it. . . No, I'm getting. . . I'm serious about this. Why does everything need to be left to Section 1983? Because the reason. I'll answer your question, Judge. As opposed to state legislatures, as opposed to state courts, you know, they're not. . . I mean, they're highly capable people on those courts and in those legislatures, and I don't understand why it's all drawn into federal courts if there's no preexisting duty clearly articulated in the law. Well, I would respectfully submit that it's. . . That the duty not to cause the arrest of an innocent person is as clear a principle as is possible to articulate in American law, and there's abundant case law that says that if the nature of the right at least is clearly encompassed within the known law, you don't need an on-point case. I would also submit for what it's. . . No, but this whole idea of duty is bound up in fair notice to a policeman. Judge, a policeman has. . . You know. . . A judge, a policeman. . . Hold on. Okay. Hold on just a second. This whole idea of duty, the reason I keep mentioning it is it's basic to the duty process that people, everybody, have fair notice about what the law expects of them, and was there fair notice. . . Judge, there was not only notice. . . About this. The complaint states that there was a process. It states that the prosecutor and the police officer were aware of the process. It states that. We're here on a motion to dismiss. The allegations of the complaint are absolutely clear. They had notice that this woman was innocent. They had notice of the process to effectuate in order to relieve her from the burdens of being arrested. It's there in the complaint. Is this or is it not a case of duty to investigate? I don't think it is, Judge, because there's no investigation. I've been throwing out that data all morning on gross negligence. So if you take that position, then there's no gross negligence? No, Judge. The gross negligence attaches because Virginia law provides that gross negligence is that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another. It is a heedless and palpable violation of legal duty respecting the rights of others. Gross negligence amounts to the absence of slight diligence or to the want of even scant care. That's Frazier v. City of Norfolk, 234 Virginia 388. There has to be a duty first before and the question of gross negligence goes to the question of violation, not to the question of the underlying duty itself. Judge, if a police officer does not have the duty not to effectuate or cause the arrest of a knowingly innocent person and the plaintiff loses her case, that is not the situation in this country. The normal way of prescribing a duty is through tort law. And that's why there's a procedure within the administrative protocols that are taught to the police officers. It doesn't have to go to tort law. We don't know what the facts are. And I gather that you and I understand that you have on your side the fact that the facts as alleged in the complaint are true. But on the other hand, the immunity and the whole purpose of the immunity is not to get too deep into the case. Absolute immunity cuts it off at the start because we don't know what the facts are and it may be upon investigation that the facts reveal that both of these defendants acted in a perfectly legitimate and permissible fashion and actually did a lot more than you think they did. But the point is absolute immunity means you don't delve into it and get into it. If immunity means anything, it means every time somebody brings a claim like this, we don't go through discovery and everything which erodes the value of immunity and it's lost. So you have this tension here a little bit between the Rule 12b-6 axiom that we take facts as alleged as true and the underlying purpose of immunity, which is you don't go deep into the facts. Judge, may I address the issue of immunity? I'm over my time. I haven't addressed absolute immunity at all. Sure, go ahead. Thank you. All right. There was no criminal process involving Fadwa Safar. At no time was Prosecutor Tingle in a prosecutorial capacity versus Safar. It is the defendant who must show that the action is prosecutorial. Swearing warrants and serving warrants and swearing out warrants and withdrawing warrants, those are prosecutorial functions. With all due respect, Judge, in the circumstances of this case, where you have a prosecutor who is not involved in any prosecutorial capacity and comes across a state of affairs in which two people who are essentially co-defendants, they are co-criminals, they are in- but you're asking him to undertake a prosecutorial act. I believe that's begging the question, Judge, because that defines the prosecutorial act as an act of the prosecutor, and the Supreme Court has said you cannot do that. That's right, but I don't understand, over and apart from the absolute immunity, I don't understand what duty there is on the part of a prosecutor to withdraw a warrant in a case that's not even on his docket. And you may talk about, well, he wasn't involved in this prosecution or what have you, but you're still really- you're going after him for a prosecutorial- an act of prosecutorial discretion, which is whether to withdraw a warrant in a case not on the prosecutor's own docket. That's pretty far-reaching. May I respond? She is withdrawing the warrant on the co-defendant because no crime has committed, and she knows that there are two defendants, and I respectfully submit that there's no discretion here. There's no discretion to withdraw the threat of arrest from one innocent person and knowingly to permit that threat of arrest, which turns into reality, to remain over the second defendant. Let me ask you a related question. Yes, sir. If that's the case, then where is the officer's liability in that context? Because there are two instances, I suppose, where the officer could have done something. The first was before the preliminary hearing, and you say he did nothing and she was obligated to do something. But, of course, Ms. Safar had not suffered an arrest at that point. You get to the hearing, and at that point the prosecutor is on notice that there's something amiss here. What liability does the officer have at that point? Judge, that may be a very valuable piece of information or issue to be developed in discovery by the defense of the prosecutor, of the officer. I do not know who did what. I don't know who said what. I don't know if the prosecutor told the— That's the whole point of the absolute immunity, to avoid litigating. Only if it's prosecutorial, Judge. And if you look at the— We've been over and over that. All right. I haven't, Judge. May I— No, we've been over and over it. We've given you additional time already, and we appreciate very much your argument. We would like to come down and greet you. Thank you. Thank you very much. Thank you very much. Thank you very much. Morning, sir. Always a pleasure. Always a pleasure. Always look forward to the— I'm sorry. Thank you so much. Thank you. Thank you.
judges: J. Harvie Wilkinson III, Albert Diaz, Henry F. Floyd